## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

CHARLES EDJUAN WATSON,     ]

          ]

     Petitioner,     ]

          ]

v.     ]     CIVIL ACTION NO. 05-IPJ-RRA-1944-S

          ]

DONAL CAMPBELL, et al.,     ]

          ]

     Respondents.     ]

## MEMORANDUM OPINION

This is a petition for a writ of habeas corpus brought by a person in custody under a judgment of a court of the State of Alabama. 28 U.S.C. § 2254. The petitioner, Charles Edjuan Watson, was indicted by a Jefferson County grand jury on September 15, 2000, in two separate indictments, for possession of cocaine, the capital murder of Darrell Bentley,[1] and the intentional murder of Darrell Bentley. Attorneys Wilson Myers and Charles Salvagio represented Watson in both cases.[2] The cases were consolidated for trial. Two days after the jury was struck, the trial judge declared a mistrial because Mr. Myers had not been present on the second day of trial, leaving Mr. Salvagio, who had not practiced criminal law for more than five years as required by Ala. Code § 13A-5-54, as Watson's sole counsel during that time. The trial judge removed Mr. Myers from the case and replaced him with attorney Robert Sanford.

---

[1] The capital murder charge was made capital because the murder was committed during the course of or in an attempt to commit first degree robbery.

[2] Apparently, Mr. Myers was appointed to represent Watson. It is unclear whether Mr. Salvagio was retained or appointed.

Watson proceeded to trial on January 8, 2002, represented by Mr. Sanford and Mr. Salvagio.

Watson was convicted on January 11, 2002, of all three charges.   The jury unanimously

recommended a sentence of life without parole.  On February 22, 2002, after conducting a sentencing

hearing, the trial judge sentenced Watson to life imprisonment without the possibility of parole for

capital murder, life imprisonment for intentional murder, and ten years' imprisonment for possession

of cocaine, to be served consecutively.

Watson retained attorney Wilson Myers to represent him on appeal.  On appeal, Watson

claimed that the trial court abused its discretion by declaring a mistrial during his first trial, because

the "reasons set forth by the trial court for declaring the mistrial are skewed, and some are outright

false." *Respondents' Exhibit D*.  On January 31, 2003, the Alabama Court of Criminal Appeals

issued an opinion affirming Watson's convictions for possession of cocaine and capital murder.

*Watson v. State*, 875 So. 2d 330 (Ala.Crim.App.2003).  The court rejected Watson's claim regarding

the mistrial on the basis that it was not preserved for review.  *Id*. at 332.  Then, sua sponte, the court

found that Watson's convictions for both the capital murder and intentional murder of Darrell

Bentley violated double jeopardy because intentional murder is a lesser included offense of capital

murder.  *Id*. at 332-33.  The court reversed the intentional murder conviction and remanded the case

for the trial court to vacate the intentional murder conviction.  *Id.*

Watson, through Mr. Myers, filed an application for rehearing, arguing that: 1) a mistrial was

not warranted since no manifest necessity existed; 2) the trial court abused its discretion and skewed

facts to create a manifest necessity where one did not exist; and 3) his attorney was "grossly

ineffective with regard to the double jeopardy claim." *Respondents' Exhibit F*.  The application for

rehearing was overruled on March 7, 2003.  *Watson*, 875 So. 2d 330.  Watson then filed a petition

for a writ of certiorari, raising the same three claims he argued in his application for rehearing.

*Respondents' Exhibit H*.  On September 19, 2003, the Alabama Supreme Court denied the petition

for a writ of certiorari, for noncompliance with Rule 39 of the Alabama Rules of Appellate

Procedure, and issued a certificate of judgment.  *Respondents' Exhibit I; Watson*, 875 So. 2d 330.

Prior to his conviction becoming final, attorney Susan G. James filed a Rule 32 petition on

Watson's behalf on March 5, 2003.  In support of the petition, Watson claimed that:

> 1) his conviction for both capital murder and intentional murder of the same victim
> constitutes double jeopardy;
>
> 2) his second trial amounted to double jeopardy because the first trial should not have
> ended in a mistrial if Mr. Salvagio was in fact retained instead of appointed;
>
> 3) he received ineffective assistance of counsel because:
>
>> a) the mistrial was declared due to Mr. Myers' absence from trial and
>> Mr. Salvagio's failure to inform the court that he had been practicing
>> law for less than five years and that he had been retained;
>>
>> b) his attorneys failed to object to the trial court's limitations on
>> closing argument regarding benefits to state's witness Lewis;
>>
>> c) his attorneys failed to object to more than one state attorney
>> making objections during the testimony of a single witness;
>>
>> d) his attorneys failed to object to the state's accusation that he lied;
>>
>> e) his attorneys failed to move to dismiss one of the murder charges
>> on double jeopardy grounds, and failed to raise the double jeopardy
>> issue on appeal;
>>
>> f) Mr. Salvagio's conduct at trial was disrespectful and prejudiced the
>> defense;
>>
>> g) Mr. Salvagio was admonished during the jury charge, which
>> damaged the defense;
>>
>> h) his lawyers gave him bad advice about his decision not to testify;

i) his attorneys failed to have independent DNA testing conducted;

j) his attorneys failed to request a jury charge on self defense;

k) his attorneys failed to object and seek a curative instruction on the state's appeal to community sentiment during the state's closing argument;

l) his attorneys' motion to dismiss based on double jeopardy was not handled properly;

m) his attorneys failed to investigate in preparation for trial, with regard to the telephone numbers in the victim's beeper;

n) his attorneys failed to use mitigation evidence during the penalty phase;

o) his attorneys failed to object during the penalty phase to the trial court's decision to preclude mitigating evidence;

p) Mr. Myers failed to preserve the mistrial issue on direct appeal or properly supplement the record on appeal;

q) his attorneys failed to object to the trial court's failure to instruct the jury on manslaughter; and

r) his attorney failed to raise the prosecutor's personal attacks on trial counsel as a ground for relief on appeal.

*Respondents' Exhibit J, part 2*, pp. 122-165.  On April 28, 2004, the trial court conducted a hearing

on the petition.  The trial court denied the petition in a lengthy order issued on June 10, 2004.

*Respondents' Exhibit J, part 1*, pp. 3-22.

On appeal from the denial of his Rule 32 petition, Watson claimed that:

1) the trial court erred in denying his Rule 32 petition; and

2) he received ineffective assistance of counsel at trial and on direct appeal, for the same reasons he raised in the original petition.

4

*Respondents' Exhibit K.*  On June 17, 2005, the Alabama Court of Criminal Appeals released a

memorandum opinion "adopt[ing] that portion of the trial court's extensively detailed order, quoted

within this memorandum opinion, as its own" and "affirming the judgment of the trial court."

*Respondents' Exhibit L.*  Ms. James failed to file an application for rehearing.[3]  As a result, the

Alabama Court of Criminal Appeals issued the certificate of judgment on July 6, 2005.

*Respondents' Exhibit M.*

On September 16, 2005, Watson filed a petition for a writ of habeas corpus in this court.  In

support of his petition, Watson appears to claim that he received ineffective assistance of counsel

because:

> a) the mistrial was declared due to Mr. Myers' absence from trial and Mr. Salvagio's
> failure to inform the court that he had been practicing law for less than five years and
> that he had been retained;
>
> b) his attorney failed to raise the double jeopardy issue on appeal;
>
> c) his attorneys deprived him of a fair trial by failing to move to dismiss one of the
> murder charges on double jeopardy grounds;
>
> d) his attorneys failed to object to the trial court's limitations on closing argument
> regarding benefits to state's witness Lewis;
>
> e) his attorneys failed to object to more than one state attorney making objections
> during the testimony of a single witness;
>
> f) his attorneys failed to object to the state's accusation that he lied;
>
> g) Mr. Salvagio's conduct at trial was disrespectful and prejudiced the defense;

---

[3]  She states that:

> The Court of Criminal Appeals['] opinion was received by counsel's staff on June 17, 2005.  It was
> inadvertently misplaced and not discovered and made available to the undersigned until after the July 1, 2005,
> due date for the petition for rehearing.

*Petitioner's 28 U.S.C. § 2254 Habeas Corpus Memorandum of Law*, p. 5.

h) Mr. Salvagio was admonished during the jury charge, which damaged the defense;

i) his lawyers gave him bad advice about his decision not to testify;

j) his attorneys failed to have independent DNA testing conducted;

k) his attorneys failed to request a jury charge on self defense;

l) his attorneys failed to object and seek a curative instruction on the state's appeal to community sentiment during the state's closing argument;

m) his attorneys' motion to dismiss based on double jeopardy was not handled properly;

n) his attorneys failed to investigate in preparation for trial, with regard to the telephone numbers in the victim's beeper;

o) his attorneys failed to use mitigation evidence during the penalty phase;

p) his attorneys failed to object during the penalty phase to the trial court's decision to preclude mitigating evidence;

q) Mr. Myers failed to preserve the mistrial issue on direct appeal or properly supplement the record on appeal;

r) his attorneys failed to object to the trial court's failure to instruct the jury on manslaughter; and

s) his attorney failed to raise the prosecutor's personal attacks on trial counsel as a ground for relief on appeal.

*Petitioner's 28 U.S.C. § 2254 Habeas Corpus Memorandum of Law*, pp. 13-72.

In response to the court's order to show cause, the respondents have filed an answer in which they assert that the petition is due to be dismissed because it is barred by procedural default. *Court Document 5*. The parties were advised that the respondents' answer would be treated as a motion for summary dismissal pursuant to Rule 8(a) of the Rules Governing Section 2254 Cases. In response, the petitioner filed a traverse. *Court Document 8.*

6

On April 13, 2006, Watson filed a supplement to his petition.  *Court Document 9.*  In the

supplement, Watson informs the court that the Alabama State Bar issued a public reprimand to

Wilson Myers, one of Watson's allegedly ineffective lawyers, for his actions leading up to the

mistrial in Watson's case.  Watson contends that this is further evidence that Myers was ineffective.

In response to the supplement, the respondents have replied that such action has no impact on this

case since it does not affect the status of Watson's ineffective assistance of counsel claims.  *Court*

*Document 10.*

The petitioner is procedurally barred from raising his claims in this court.  Although each of

Watson's numerous claims was raised in the Rule 32 petition and on appeal from the denial of that

petition, the claims are procedurally barred because he failed to present the claims in an application

for rehearing and to the Alabama Supreme Court for review as required by *O'Sullivan v. Boerckel*,

526 U.S. 838, 844-45, 119 S. Ct. 1728, 1732-33 (1999).  "Section 2254(c) provides that a habeas

petitioner 'shall not be deemed to have exhausted the remedies available in the courts of the State

. . . if he has the right under the law of the State to raise, by any available procedure, the question

presented.'"  *Boerckel,* 526 U.S. at 844, 119 S. Ct. at 1732.  To exhaust state court remedies, federal

habeas corpus petitioners need only provide the "state courts a fair opportunity to act on their

claims."  *Id.*  The *Boerckel* Court held that in order to satisfy the exhaustion requirement for bringing

a habeas corpus petition, the petitioner was required to present his claims to the state supreme court

for discretionary review when that review is part of the ordinary review procedure in the State. *Id*.,

526 U.S. at 847, 119 S.Ct. at 1733. The Eleventh Circuit Court of Appeals has indicated that "there

is no doubt that Alabama's direct discretionary review procedures bring Alabama prisoner habeas

petitions within the scope of the *Boerckel* rule." *Smith v. Jones*, 256 F.3d 1135, 1140 (11th Cir.

2001).

> The Alabama Supreme Court's certiorari review rule gives that court broad discretion over the issues it will review.  Among other grounds, certiorari review can be granted to decide issues of first impression; to decide whether an Alabama Supreme Court decision relied upon by the Court of Criminal Appeals ought to be overruled; and to determine whether the Court of Criminal Appeals' decision conflicted with prior decisions of the United States Supreme Court, the Alabama Supreme Court, or the Court of Criminal Appeals itself.  [FN5]
>> FN5.  Alabama Rule of Appellate Procedure 39(c), as in effect at the time of Smith's direct appeal, provided that:
>> In all other cases [except death penalty cases], civil or criminal, petitions for writs of certiorari will be considered only:
>> . . . .
>> (3) From decisions when a material question requiring decision is one of first impression in Alabama;
>> (4) From decisions in conflict with prior decisions of the United States Supreme Court, the Alabama Supreme Court, or the Alabama courts of appeals; . . . and,
>> (5) Where petitioner seeks to have controlling [Alabama] supreme court cases overruled which were followed in the decision of the court of appeals.
>> Ala.R.App.P.39(c)(1990)(amended 2000). The rule has not been changed in any respect relevant to the Boerckel rule since Smith's direct appeal.
> Any federal law question would fit within one or more of those grounds for certiorari review, and that is particularly true in light of the limitation on federal habeas review now contained in 28 U.S.C. § 2254(d).  Because the scope of the Alabama Supreme Court's discretionary review on direct appeal is broader than that of the Illinois Supreme Court, which was the court whose review procedures were involved in the *Boerckel* case itself, see 526 U.S. at 845-48, 119 S. Ct. at 1732-34, Alabama convictions and prisoners clearly come within the scope of the *Boerckel* rule.

*Id*. at 1140-41.  Additionally, the Eleventh Circuit Court of Appeals has held that the *Boerckel* rule

applies to a petitioner's state collateral review process.  *Pruitt v. Jones*, 348 F.3d 1355, 1359 (11th

Cir. 2003).

Although Watson raised his claims in his Rule 32 petition and on appeal from the denial of that petition, he neglected to file an application for rehearing or seek state certiorari review. Therefore, the petitioner has not satisfied the exhaustion requirements of § 2254(c) as to his claims.[4] However, because it is now too late for him to return to state court to attempt to exhaust the claims, this court considers the claims to be procedurally defaulted. *Collier*, 910 F.2d 770, 773 (11th Cir.1990).

If a petitioner has procedurally defaulted on a constitutional claim, he is barred from litigating that claim in a federal habeas corpus proceeding unless he can show adequate "cause" for and "actual prejudice" from the default. *Engle v. Isaac,* 456 U.S. 107 (1982); *Wainwright v. Sykes,* 433 U.S. 72 (1977). The "cause and prejudice" test of *Engle v. Isaac* and *Wainwright v. Sykes* is in the conjunctive. Therefore, the petitioner must prove both cause and prejudice to excuse his procedural default.

The United States Supreme Court summarized the "cause and prejudice" standard:

> In *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), this Court adopted the "cause and prejudice" requirement of *Francis v. Henderson*, [425 U.S. 536 (1976)], for all petitioners seeking federal habeas relief on constitutional claims defaulted in state court. The *Sykes* Court did not elaborate upon this requirement, but rather left open "for resolution in future decisions the precise definition of the 'cause'-and-'prejudice' standard." 433 U.S. at 87, 97 S.Ct. at 2507. Although more recent decisions likewise have not attempted to establish conclusively the contours of the standard, they offer some helpful guidance on the question of cause. In *Reed v. Ross*, 468 U.S. 1, 104 S. Ct. 2901, 82 L. Ed. 2d 1 (1984), the Court explained that although a "tactical" or "intentional" decision to forgo a procedural opportunity normally cannot constitute cause, *id.,* at 13-14, 104 S.Ct. at 2909, "the failure of counsel to raise a constitutional issue reasonably unknown to him is one situation in which the [cause] requirement is met." *Id.* at 14, 104 S.Ct. at 2909. The

---

[4] The court is assuming that Watson's supplemental claim was intended to supplement the claims of ineffective assistance of counsel raised in the original petition. To the extent that Watson may be raising a new claim in his supplement, that claim has never been presented to the state courts and is procedurally barred for that reason.

Court later elaborated upon *Ross* and stated that "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). We explained that "a showing that the factual or legal basis for a claim was not reasonably available to counsel, . . . would constitute cause under this standard." *Ibid.*

*Amadeo v. Zant*, 486 U.S. 214, 221-22 (1988).

The petitioner must also demonstrate that he was prejudiced; he must show "not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." (emphasis in original). *United States v. Frady*, 456 U.S. 152, 170 (1982). A federal habeas court, however, will consider a procedurally defaulted claim in the absence of cause, if a "fundamental miscarriage of justice" has "probably resulted in the conviction of one who is actually innocent." *Smith v. Murray*, 477 U.S. 527, 537-38 (1986) (*quoting, respectively, Engle*, 456 U.S. at 135, and *Murray v. Carrier,* 477 U.S. 478, 496 (1986)).

Watson's current attorney, Susan James, agues that her failure to file an application for rehearing and a petition for certiorari should serve as cause to excuse the procedural default of Watson's claims:

> The undersigned's failure to exhaust all state court remedies as related to Watson's Rule 32 petition is ineffective assistance per se. "When an attorney fails to file an appeal, and the petitioner can prove that he would have appealed" but for counsel's failure to file, prejudice is presumed. *Roe v. Flores-Ortega*, 528 U.S. 470, 145 L. Ed. 2d 985, 120 S. Ct. 1029, 1038 (2000).
> . . .
> Sadly, now on two occasions, Watson has defaulted in petitioning the Alabama Supreme Court for certiorari. On neither occasion was it his fault. Both times his lawyer (including the present) has been ineffective. Ironically, Watson in his Rule 32 petition and the habeas petition alleges ineffective assistance of trial

counsel and former appellate counsel.  Now present counsel must add to the ranks
of Watson's endless string of incompetent attorneys.

　　　As Justice Johnstone noted in his dissent in a death case with a similar
counsel error, "[b]ut isn't the defendant entitled to some competent lawyer?" *Ex
Parte Donald Dallas*, 845 So. 2d 780 (Ala. 2003).

*Petitioner's 28 U.S.C. § 2254 Habeas Corpus Memorandum of Law*, pp. 5-7.[5]

"While constitutionally ineffective assistance of counsel has been considered cause to excuse

a procedural default that occurs at a stage in the proceedings in which the defendant enjoys a Sixth

Amendment right to the effective assistance of counsel, there is no constitutional right to an attorney

in state post-conviction proceedings."  *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir.

2003)(*citing Coleman v. Thompson*, 501 U.S. 722, 752, 111 S.Ct. 2546, 2566, 115 L. Ed. 2d 640

(1991)).

> For counsel's ineffectiveness to establish cause sufficient to excuse a procedural
> default, the ineffectiveness must be attributable to the state. *Coleman v. Thompson*,
> 501 U.S. 722, 754, 111 S.Ct. 2546, 2567, 115 L. Ed. 2d 640 (1991); *Hill*, 81 F.3d at
> 1024.  Ineffective assistance of counsel may be imputed to the state only when the
> Sixth Amendment requires that the state furnish the defendant with effective counsel.
> *Coleman*, 501 U.S. at 754, 111 S.Ct. at 2567.  Although defendants have a Sixth
> Amendment right to counsel at trial and on direct appeal, they possess no
> corresponding right to counsel while collaterally attacking their convictions.
> *Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S.Ct. 1990, 1993, 95 L. Ed. 2d 539
> (1987); *Hill*, 81 F.3d at 1024.  It follows, and this Court has repeatedly held, that
> ineffectiveness of collateral counsel cannot serve as "cause" excusing the failure to
> raise a claim in a previous habeas petition because any inadequacies in habeas
> representation may not be imputed to the state.  *See, e.g., Hill*, 81 F.3d at 1025
> ("[T]his Court has rejected the proposition that collateral counsel's ineffectiveness
> can serve as cause excusing a procedural default."); *Weeks v. Jones*, 26 F.3d 1030,
> 1046 (11th Cir. 1994) (holding that "ineffective assistance of counsel in a state
> collateral proceeding is not cause to override a procedural bar that precludes review

---

[5]   In Watson's traverse, Ms. James goes further by attempting also to blame Watson's trial and appellate
attorneys for the procedural default of Watson's claims. *Watson's Response to Respondents' Answer*, pp. 2-4.  Such an
argument is clearly frivolous, as there is no way that Watson's trial or appellate counsel could be held responsible for
Ms. James' failure to properly exhaust the claims raised in Watson's Rule 32 petition.

of a claim in federal court"), *cert. denied*, 513 U.S. 1193, 115 S. Ct. 1258, 131 L. Ed. 2d 137 (1995).

*In re Magwood*, 113 F.3d 1544, 1551 (11th Cir. 1997)(footnote omitted).  *See also Henderson*, 353 F.3d at 892.

Therefore, Ms. James' ineffectiveness in failing to file an application for rehearing and failing to petition the Alabama Supreme Court for certiorari after the Alabama Court of Criminal Appeals affirmed the denial of Watson's Rule 32 petition cannot be considered as cause to excuse the procedural default of Watson's claims in this court.

Further, although Watson has alternatively suggested in his Response to Respondents' Answer that the dismissal of this action would result in a "fundamental miscarriage of justice," he has not attempted to offer any evidence even to suggest that he might be actually innocent of the crimes for which he was convicted.  Therefore, he is unable to take advantage of the fundamental miscarriage of justice exception to the doctrine of procedural default.

Watson has procedurally defaulted his claims. Because he has not established cause and prejudice to excuse the default, or that he is factually innocent of the crime for which he was convicted, this petition is due to be DISMISSED.

An appropriate order will be entered.

DONE this 21st day of September, 2006.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE